# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| STACEY LONG, | ) | CASE NO: 1:18CV1364 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| BRIGHAM SLOAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| | ) | **and ORDER** |

This case is before the Court upon referral for general pretrial supervision. *See* Non-Document Order dated October 2, 2018. Currently pending are the following: (1) Plaintiff Stacey Long's Requests for Preliminary Injunction (Doc. Nos. 8, 22); (2) Defendant Michael Davis' Motion to Dismiss for Failure to State a Claim (Doc. No. 29); (3) Defendants Brigham Sloan's and J. King's Joinder in Defendant Davis' Motion to Dismiss, and Motion to Dismiss for Failure to State a Claim (Doc. No. 31); (4) Defendants E. Weizer's and G. Stills' Joinder in Defendant Davis' Motion to Dismiss (Doc. No. 32); and (4) Plaintiff's Motion for Appointment of Counsel (Doc. No. 41).

For the following reasons, it is recommended that Plaintiff's Requests for Preliminary Injunction (Doc. Nos. 8, 22) be DENIED. It is further recommended that Defendant Davis' Motion to Dismiss (Doc. No. 29) be GRANTED; Defendant Sloan and King's Motion to Dismiss (Doc. No. 31) be GRANTED; and Defendant Weizer and Stills' Motion to Dismiss (Doc. No. 32) be GRANTED. In addition, Plaintiff's Motion for Appointment of Counsel (Doc. No. 41) is DENIED.

## I.  Procedural Background

On June 15, 2018, Plaintiff Stacey Long, proceeding *pro se*, filed a"Complaint and Request for Injunction" against (1) Brigham Sloan, Warden, Lake Erie Correctional Institution ("La.E.C.I."); (2) Ms. J. King, Warden, Special Programs, La.E.C.I.; and (3) Michael Davis, Ph.D., Religious Service Administrator, Ohio Department of Rehabilitation & Correction ("ODRC.") (Doc. No. 1.)  Plaintiff's "Complaint" consisted of two pages, which listed the case caption and parties only.  (*Id*.)  There were no factual allegations or legal claims, and the "Complaint" was unsigned.  (*Id*.)

On October 4, 2018, the undersigned issued an Order finding the "Complaint" to be deficient in several respects.  (Doc. No. 6.)  Plaintiff was provided the opportunity to file a full, complete, and signed copy of his Complaint by no later than November 4, 2018.  (*Id*.)

Plaintiff thereafter filed a Complaint (Doc. No. 7) and Request for Preliminary Injunction (Doc. No. 8) on October 15, 2018.  In the Complaint, Plaintiff again named Sloan, King, and Davis as Defendants.  (Doc. No. 7.)  Plaintiff alleged violations of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. and 28 CFR § 541.12(1) & (4), based on Defendants' alleged refusal to provide him kosher meals.  (*Id.* at PageID#33.)

On November 13, 2018, Defendant Davis filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  (Doc. No. 11.)  Shortly thereafter, Defendants Sloan and King filed a Motion to Dismiss, in which they joined in the arguments raised by Defendant Davis and raised additional arguments in support of their Motion. (Doc. No. 13.)  Plaintiff filed a Brief in Opposition to both Motions, as well as a "Declaration"

regarding his religious affiliation, on December 19, 2018.  (Doc. Nos. 15, 16.)

On that same date, Plaintiff filed a Motion for Leave to Amend Complaint pursuant to Fed. R. Civ. P. 15(a)(2).  (Doc. No. 14.)  Therein, Plaintiff sought leave to amend his Complaint to add two new parties, identified only as Ms. Weizer and Mr. Stills of Trinity Food Service. (*Id*.)  Defendants did not oppose Plaintiff's Motion for Leave.

On January 25, 2019, the undersigned issued an Order granting Plaintiff leave to amend the Complaint for the limited purpose of adding claims against Ms. Weizer and Mr. Stills.  (Doc. No. 19.)  The Order required Plaintiff to file his Amended Complaint by no later than February 14, 2019.  (*Id*.)

On February 15, 2019, Plaintiff filed an Amended Complaint (Doc. No. 24) and Motion for Preliminary Injunction (Doc. No. 22.).[1]  On February 26, 2019, Defendant Davis filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 29.)  Defendants Sloan and King filed a Joinder in Davis' Motion and their own Motion to Dismiss, on March 18, 2019. (Doc. No. 31.)  Shortly thereafter, on March 20, 2019, Defendants Weizer and Stills filed a Joinder in Davis' Motion to Dismiss.  (Doc. No. 32.)  Plaintiff filed Briefs in Opposition on March 22, 2019 (Doc. No. 33), April 1, 2019 (Doc. No. 34), and April 11, 2019 (Doc. No. 36.) Defendants each filed Reply Briefs, to which Plaintiff filed additional responses.  (Doc. Nos. 35, 37, 38, 39, 40, 42.)  Lastly, on May 6, 2019, Plaintiff filed a Motion for Appointment of Counsel (Doc. No. 41), which Defendants Sloan and King opposed (Doc. No. 43.)

---

[1] On that same date, Plaintiff also filed another "Motion to Amend Complaint."  (Doc. No. 21.)  However, in that motion, Plaintiff did not seek to add new claims or parties but merely restated that the Court had previously allowed him to file an amended complaint.  (*Id*.)  The undersigned, therefore, denied Plaintiff's "Motion" as moot.  (Doc. No. 26.)

## II.  Factual Allegations

The Amended Complaint (Doc. No. 24) contains the following factual allegations.

Plaintiff is currently an inmate at La.E.C.I.  On December 4, 2017, he "requested the sign in sheet to retrieve the Kosher breakfast, when I was then informed that they were discontinued at this institution."  (*Id*. at PageID#175.)  Plaintiff asserts that "the aforementioned employee's of ODRC and contracted employees of Core Civic & Trinity Food Service have been deliberately obscurant in stating the person[s] responsible for the abnegation of the guaranteed constitutionally & Federally protected rights of the free exercise of religion."  (*Id*.)  In particular, he states Defendant Stills, whom he identifies as "Director of Operations," "was obdurate to my request of the person[s] in the issuance of the directive to cease the Religious Accommodation of Kosher Meals."  (*Id*. at PageID#176.)

Plaintiff then alleges the non-kosher meals provided at La.E.C.I. are "a high glycemic diet, consisting largely of starch & carbohydrates and hydrogenated oils that are directly related to diabetes, cardio-vascular & heart disease."  (*Id*. at PageID#178.)  He asserts that meat dishes served at the prison are "innately nutritionless, unpalatable, & unsatiating with a putrid odor," and not in accordance "with the State & Federal requirements for a nutritionally healthy diet." (*Id*.)  Plaintiff states "the peanut butter is of the lowest quality," and "the exorbitant sodium inherent with these processed foods results in deliberate & systematic poisoning."[2]  (*Id*.)  He claims "this putrid product is explicitly forbidden by the jewish dietary law of Kashrut & the

---

[2] Plaintiff claims Defendants have attempted to conceal their activities by submitting "fraudulent food evaluations," reducing portion sizes "smaller than the recommended serving size," and mixing multiple different types of products together from different days "altering the content of the menu . . . often after the (3)- day expiration period."  (*Id*. at PageID#s 180-181.)

4

jewish rituals & religious observances grounded in jewish law of Halkhah." (*Id.*) Plaintiff further claims Defendants failed to provide prior notification or explanation of the decision to discontinue kosher meals, thereby depriving him of due process. (*Id.* at PageID#177.)

As a result of Defendants' refusal to provide him with kosher meals, Plaintiff claims he suffered "an imbalance & fluctuation in my internalized Normalized Ratio (INR)." (*Id.* at PageID# 179.) He asserts this fluctuation is related to the fact that he is a "lifetime recipient" of the medication, coumadin. (*Id.*) Plaintiff claims "gastrointestinal disorders which are side effects of [this] medication compounded by the consumption of soy which is inherently difficult to digest, but is recommended not to be consumed by those of us on said medication due to its interference with the effectiveness of the medication." (*Id.*) Plaintiff alleges he suffered "chronic distention and acute abdominal pain" as a result of the discontinuance of kosher meals. (*Id.* at PageID#177.) He asserts "medical then refused to provide relief with a diet pass from the dietician," claiming "medical is non-existent for the same reason of the crypto ethos of regulatory insouciance that drives the Trinity Food Service to circumvent U.S.D.A. Guidelines, profit at the expense of the health & well-being of those of us incarcerated in this for-profit industry." (*Id.* at Page ID#s 176, 179.)

In sum, Plaintiff claims he "has been subjected to a bevy of medical exigents resulting in acute pain & denied adequate medical & dietary intervention that a reasonably trained professional responsible for the lives of other would be cognitive of the side effects of prescribed medication & certain products served at the dining hall are to be avoided." (*Id.* at PageID#s 179-180.) He states he "is subjected to nothing less, then the 'Cruel & Unusual Punishment' of a hobson's choice; consume the products served by the Trinity Food Company that have been

5

recognized by one of the 'World's' leading authority in health, the Cleveland Clinic, as imminently fatal, or don't eat & succumb to the inevitable deteriorating health consequences of nutritional deprivation."[3] (*Id.* at PageID#180.)

The Amended Complaint asserts "the denial of Religious Accommodations of Kosher meals and its subsequent ramifications" violates RLUIPA, and the First, Eighth, and Fourteenth Amendments of the U.S. Constitution. (*Id.* at PageID#179.) With regard to his Eighth Amendment claim, Plaintiff claims Defendants have been deliberately indifferent to his medical needs, asserting Defendants had "prior knowledge of law & Plaintiffs chronic medical exigence, whereby denying Plaintiff adequate medical attention & a safe nutritional diet." (*Id.* at PageID#180.) He seeks injunctive relief, including an Order directing Defendants to reinstate kosher meals and "institute an independent oversight committee with the 'authority' to correct the tacitly condoned ethos of malfeasance of Core Civic, Trinity Food Service, and contracted medical provider." (*Id.* at PageID#177.) Plaintiff also seeks punitive damages in the amount of $250,000. (*Id.*)

### III. Motions to Dismiss

**A.  Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this

---

[3] Plaintiff alleges he filed a grievance regarding the refusal to provide him kosher meals, and states "I have fully completed the grievance procedure to the highest levels, Chief Inspector, Columbus, Ohio." (Doc. No. 24 at PageID#183.) None of the Defendants argue that Plaintiff failed to exhaust his administrative remedies. The Court, therefore, does not reach that issue herein.

Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and

7

generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

**B.      Evidence Submitted Outside the Pleadings**

Prior to reaching the merits of the parties' arguments, the Court notes that Plaintiff has attached several exhibits to his various responses to Defendants' Motions to Dismiss, and asked the Court to consider these exhibits as support for the claims set forth in his Amended Complaint.  These exhibits include the following: (1) a document entitled "Declaration of Stacey Long," which is unsigned and dated December 15, 2018 (Doc. No. 38-4); (2) a document entitled "Declaration of Stacey Long," which is signed and dated April 5, 2019 (Doc. No. 36-1); (3) a letter dated June 8, 2018 from "M. Tatman, RDN, LDN," to Plaintiff regarding "ODRC Menu Nutrition" (Doc. No. 36-2); and (4) an article from "mercola.com" entitled "7 Worst Ingredients in Food" (Doc. No. 36-3).

Defendants Weizer and Stills argue the Court should disregard the above exhibits because they are matters outside the pleadings and, therefore, not properly considered in the context of a Rule 12(b)(6) motion.  (Doc. No. 39 at 2.)  In response, Plaintiff argues "the declaration with exhibits are not extrinsic to Plaintiff's pleadings, but to the contrary intrinsic and central to Plaintiff's complaint to provide this Court a visual display of products that are in violation of the  United States Constitution, Ohio Revised Code, and DRC policy to provide three (3) nutritionally balanced meals daily."  (Doc. No. 42-1 at 2.)

In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits

attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.  *See also Brent v. Wayne County Dep't of Human Services,* 901 F.3d 656, 694 (6th Cir. 2018) (same); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("This circuit has further 'held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.' ").  Under Rule 12(d), however, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  If a motion to dismiss is converted to a motion for summary judgment, the court must give all parties "a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*

For the following reasons, it is recommended that the Court decline to consider the exhibits attached to Plaintiff's briefs.  The "Declarations," letter, and article noted above are not referenced in the Complaint nor has Plaintiff demonstrated they are central to his claims.  Moreover, the Court notes that the December 15, 2018 Declaration attached to Plaintiff's brief is unsigned,[4] and the letter is unauthenticated.  Accordingly, it is recommended the Court exclude these documents from consideration of Defendants' Motions.

Plaintiff also requests this Court consider the arguments raised, and attachments to, his Brief in Opposition to Defendant Davis' previously filed Motion to Dismiss.  (Doc. No. 38-1 at 3.)  It is recommended the Court decline to do so.  The briefing relating to Defendants' previous

---

[4] The Court notes that, in December 2018, Plaintiff separately filed a signed copy of the December 15, 2018 Declaration.  (Doc. No. 16.)  It is recommended that this Declaration be excluded from consideration.  Plaintiff does not reference this Declaration in his Amended Complaint or attach it thereto, despite the fact that the Amended Complaint was filed several months later, on February 15, 2019.  Nor does Plaintiff offer any explanation for failing to include the allegations in the December 15, 2018 Declaration in the Amended Complaint itself.

motions to dismiss related to Plaintiff's originally filed Complaint, which is no longer the operative Complaint in this matter.  Moreover, the Court does not look favorably on Plaintiff's attempt to subvert the page limitations[5] in this matter by incorporating entire briefs previously filed in this matter.  Finally, with regard to the Exhibits attached to Plaintiff's previous brief in opposition (Doc. Nos. 15-1 through 15-5), these Exhibits are neither referenced in the Complaint, central to Plaintiff's claims, or properly authenticated.[6]  Accordingly, it is recommended the Court decline to consider Plaintiff's prior briefing and exhibits in the context of Defendants' Motions to Dismiss.

## C.    RLUIPA

As noted above, in the Amended Complaint, Plaintiff asserts that "the denial of Religious Accommodations of Kosher meals" violates the RLUIPA.  (Doc. No. 24 at PageID#179.) Defendants move for dismissal of this claim on the basis that Plaintiff has failed to allege that the lack of a kosher diet places a substantial burden on his religious exercise.

Under the RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest, and (2) is the least

---

[5] Pursuant to Local Rule 7.1(f), memoranda relating to dispositive motions in standard track cases must not exceed 20 pages.

[6] Exhibits 15-1 through 15-4 purport to contain nutritional information for certain foods prepared at La.E.C.I., i.e.,; "Charbroiled Patties," "Country Fried Chuckwagon Pattie Fritters Made with Beef, Chicken, and Turkey," "Rotini-R," and "Sunshine Brand Cheese Sauce Mix." (Doc. Nos. 15-1 through 15-4.) Exhibit 15-5 appears to be an article from www.thehealthyhomeeconomist.com entitled "How Soy Wreaks Havoc on Digestion and the Pancreas."  (Doc. No. 15-5.)

restrictive means of furthering that compelling governmental interest." 42 U.S.C. §

2000cc–1(a)(1)–(2).  The Act defines "religious exercise" to include "any exercise of religion,

whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).[7]  "A

person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and

obtain appropriate relief against a government."[8] § 2000cc-2(a).

 "To establish a cognizable claim under RLUIPA, the inmate must first demonstrate that a

prison policy substantially burdens a religious practice."  *Haight v. Thompson,* 763 F.3d 554,

559-560 (6th Cir. 2014).  *See also Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007) ("The

threshold inquiry under RLUIPA is whether the challenged governmental action substantially

burdens the exercise of religion."); *Dunlap v. Losey*, 40 Fed. Appx. 41, 43 (6th Cir. 2002)

("RLUIPA ... requires the complainant to show that his religious exercise was substantially

burdened."); *Green v. Tudor*, 685 F. Supp.2d 678, 703 (W.D. Mich. 2010); *Ketzner v. Williams*,

2008 WL 4534020 at * 25 (W.D. Mich. Sept. 30, 2008).  "So long as the practice is traceable to a

sincerely held religious belief, *see Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13, 125 S.Ct. 2113,

161 L.Ed.2d 1020 (2005), it does not matter whether the inmate's preferred exercise is 'central'

to his faith, 42 U.S.C. § 2000cc–5(7)(A)."  *Haight,* 763 F.3d at 560.  The burden of proving the

---

 [7]  This section of the Act, known as Section 3, applies when "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance,"or "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." §2000cc-1(b)(1)-(2).

 [8] The Sixth Circuit, however, has found that monetary damages are not available in RLUIPA cases.  *See Haight*, 763 F.3d at 570 (finding monetary damages are not available in RLUIPA cases and noting: "[w]e have considerable company in reaching this conclusion. Every circuit to consider the question . . . . has held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities.")

existence of a substantial burden rests on the inmate.  *See Baranowski*, 486 F.3d at 124.

Once an inmate makes this showing, the prison policy survives only if it serves a compelling

governmental interest in the least restrictive way.  *See* § 2000cc–1(a); *Haight*, 763 F.3d at 560.

The RLUIPA does not define the phrase "substantial burden," but courts have interpreted

it as imposing a high burden.  *See Livingston Christian Schools v. Genoa Charter Township,* 858

F.3d 996, 1003 (6th Cir. 2017) (explaining that "not just any imposition on religious exercise will

constitute a violation of RLUIPA. Instead, a burden must have some degree of severity to be

considered 'substantial.'").  *See also Living Water Church of God v. Charter Twp. of Meridian*,

258 Fed.Appx. 729, 736 (6th Cir.2007) ("[A] substantial burden [under the RLUIPA] is a

difficult threshold to cross"); *Green,* 685 F.Supp.2d at 703 (same).  The Sixth Circuit has

articulated the contours of this burden, as follow: "[w]hen prison officials 'place[ ] substantial

pressure on an adherent to modify his behavior and to violate his beliefs,' . . ., or 'effectively bar'

his sincere faith-based conduct,.. . . they necessarily place a substantial burden on it."  *Haight*,

763 F.3d at 565 (internal citations omitted).  *See also Barhite v. Caruso*, 377 Fed. Appx. 508, 511

(6th Cir. May 14, 2010) ("An action will be classified as a substantial burden 'when that action

forced an individual to choose between 'following the precepts of her religion and forfeiting

benefits,' or when the action in question placed 'substantial pressure on an adherent to modify

his behavior and to violate his beliefs.'") (quoting *Living Water Church of God*, 258 Fed. Appx.

at 734).

Here, Defendants argue Plaintiff's RLUIPA claim should be dismissed because "nowhere

does Plaintiff allege that denying him kosher meals substantially burdens his religious exercise."

(Doc. No. 29 at 6.)  They maintain that "where keeping kosher is no more than a matter of a

dietary health preference there is no substantial pressure on an inmate to modify his behavior or to violate his sincerely held religious beliefs." (*Id*. at 7.)

In response, Plaintiff maintains his RLUIPA claim survives because he declared his religious affiliation as Jewish upon his arrival at prison, and has attended worship practices in the Jewish faith "for years." (Doc. No. 33 at 3, 5.) He maintains his "sincerely held beliefs are based on the purity laws of Hashem's word in Torah." (*Id*. at 4.) Plaintiff further asserts that obeying the dietary laws of the Torah is central to his sincerely held religious beliefs, and argues the Defendants' actions are "a substantial burden causing Plaintiff to modify his behavior and violate his beliefs causing irreparable harm." (*Id*.)

Plaintiff, however, fails to include any of these allegations in the Amended Complaint. While Plaintiff asserts in his briefs that he declared his religious affiliation as Jewish upon arrival at the ODRC, and that eating kosher meals is an integral part of his religious beliefs, none of these allegations appear anywhere in the Amended Complaint. Indeed, at no point in the Amended Complaint does Plaintiff allege that he is Jewish; that following kosher dietary laws is part of his personal exercise of religious beliefs; or that the denial of kosher meals otherwise places a substantial burden on his religious exercise. While Plaintiff complains (at some length) that the non-kosher meals provided at La.E.C.I. are "nutritionless, unpalatable & unsatiating," the Amended Complaint does not allege that being denied kosher meals substantially burdens Plaintiff's *religion*.[9] To the contrary, Plaintiff frames the personal consequences to him of the

---

[9] Plaintiff asserts that the non-kosher meals served at La.E.C.I. are "explicitly forbidden by the jewish dietary law of Kashrut & the jewish rituals & religious observances grounded in jewish law of Halkhah." (Doc. No. 24 at PageID# 178.) However, Plaintiff does not allege, at any point in the Amended Complaint, that *he* is Jewish or that following kosher dietary laws is part of *his* personal religious beliefs.

13

denial of kosher meals in terms of the allegedly negative health consequences of eating non-kosher meals, claiming he is forced to either  "consume the products served by the Trinity Food Service that have been recognized by . . . the Cleveland Clinic as imminently fatal, or don't eat & succumb to the inevitable deteriorating health consequences of nutritional deprivation."  (Doc. No. 24 at PageID# 180.)

In sum, Plaintiff fails to include any allegations in the Amended Complaint that kosher meals "are necessary for  - or at all related to – the practice of *his religion*."  *Barhite*, 377 Fed. Appx. at 511 (emphasis added).  In the absence of any such allegations, it is recommended the Court find Plaintiff has failed to state a claim under the RLUIPA against any of the named Defendants as a matter of law.

Accordingly, it is recommended Defendants' Motions to Dismiss be granted with respect to Plaintiff's RLUIPA claim.

**D.     Section 1983 Claims**

Plaintiff also alleges a number of claims against Defendants pursuant to 42 U.S.C. § 1983. To maintain a claim under Section 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).  The first step in any such claim is to identify the specific constitutional right allegedly infringed.  *Graham v. Connor*, 490 U.S. 386,

14

394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Baker*, 443 U.S. at 140.

Here, Plaintiff alleges Defendants violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.  The Court will address each of these categories of alleged constitutional violations separately, below.

### 1.      First Amendment Claims

Plaintiff alleges the decision to deny him kosher meals violates his constitutional rights under the First Amendment to the United States Constitution.  (Doc. No. 24.)  Defendants move for dismissal of this claim on the grounds Plaintiff failed to allege that any of the individual Defendants named in the Amended Complaint were personally involved in the decision to deny him kosher meals.  (Doc. Nos. 29, 31, 32.)  Defendants further assert Plaintiff's First Amendment claim should be dismissed because Plaintiff failed to allege that eating kosher meals is a part of his sincerely held religious beliefs.  (*Id.*)

It is recommended Plaintiff's First Amendment claim be dismissed for the following reasons.  It is well established that a Section 1983 plaintiff cannot establish the liability of any defendant absent a clear showing that he/she was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *See Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).  *See also Pool v. Burger*, 2019 WL 441500 at * 2 (6th Cir. Jan. 10, 2019) (noting plaintiff "needed proof of personal involvement [by the] supervisor to incur personal liability"); *McKinney v. Kasich,* 2017 WL 4541720 at * 3 (6th Cir. Sept. 29, 2017); *Imburgia v. Cruz*, 2012 WL 1035731 at * 4 (N.D. Ohio March 27, 2012).  As the Sixth Circuit has explained, "[a]llegations of *respondeat superior* do not sustain a § 1983 claim against state employees in their individual capacities, meaning that officials are personally liable for damages

under that statute 'only for their own unconstitutional behavior.'"  *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989)).  *See also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008)*; Miller v. Calhoun County*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005); *Pool*, 2019 WL 441500 at * 2.

Further, "even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009).  To succeed on his claim, "'[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Grinter,* 532 F.3d at 575 (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984)).  *See also Colvin,* 605 F.3d at 292; *Leech v. Mayer*, 588 Fed. Appx. 402, 413 (6th Cir. Oct. 22, 2014).

In his briefs in opposition, Plaintiff argues Defendants "participated directly in the Constitutional violations and/or created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom with a history of widespread abuse in which they were put on notice immediately."  (Doc. No. 36 at 2.)  *See also* Doc. No. 34 at 6.  He then sets forth a number of specific allegations against Defendants, including that (1) Defendants Weizer and Stills "purchas[ed] spurious industrially manufactured food-like substances. . . [that are] defined as poison by Webster's Dictionary" and "then served these products with impunity;" and (2) "hundreds if not more informal complaints have been brought to the attention of Warden Sloan and J. King, Warden of Special Programs."  (Doc. No. 36 at 3; Doc. No. 42-1 at 5.)

16

Even construed liberally, however, none of these allegations appear anywhere in the Amended Complaint.  To the contrary, a close review of the Amended Complaint reveals that Plaintiff has not alleged any facts suggesting Defendants Sloan, King, Weizer and/or Stills (1) were personally involved in the decision to deny Plaintiff kosher meals; or (2) authorized, approved, or knowingly acquiesced in the decision to deny him kosher meals.  With regard to Defendants Sloan and King, the Amended Complaint identifies Defendant Sloan as the Warden, and Defendant King as the "Warden Special Programs" of La.E.C.I.  (Doc. No. 24 at PageID# 173.)  There are no specific factual allegations in the Amended Complaint relating to either of these Defendants.  Notably, Plaintiff fails to allege that either Sloan or King had any involvement in the administration of the kosher meal program at La.E.C.I., nor does he allege either of these Defendants were actively involved in the denial of kosher meals.  Merely listing Defendants Sloan and King in the case caption is insufficient to state a plausible claim for relief against them.[10]  *Davismoore v. Davis*, 2019 WL 1558679 at * 2 (N.D. Ohio April 10, 2019).  *See also Moore v. Michigan*, 2008 WL 724151 at * 9 (W.D. Mich. March 17, 2008) ("Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.")  In the absence of any allegations of specific conduct or personal involvement relating to the decision to deny Plaintiff kosher meals, it is recommended Plaintiff's First Amendment claims against Defendants Sloan and King be dismissed.

With respect to Defendants Weizer and Stills, the Amended Complaint identifies these

---

[10]  Moreover, the mere fact that Defendants Sloan and King serve in the capacity as Warden (or Warden, Special Programs in the case of Defendant King) is not sufficient to impose Section 1983 liability.  *See Davismoore*, 2019 WL 1558679 at * 2 (citing *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)).

defendants as "Food Service Managers."  (Doc. No. 24 at PageID#174.)  As Defendant Weizer

correctly notes, there are no specific factual allegations relating to her in the Amended

Complaint.  Of particular significance, Plaintiff fails to allege that Defendant Weizer had any

involvement in the administration of the kosher meal program at La.E.C.I., nor does he allege

that she was actively involved in (or had any responsibility for) the denial of kosher meals.  As

noted above, merely listing Defendant Weizer in the case caption is insufficient to state a

plausible claim for relief against her.  *See Davismoore,* 2019 WL 1558679 at * 2; *Moore*, 2008

WL 724151 at * 9.  With regard to Defendant Stills, the only factual allegation relating to him in

the Amended Complaint is that he "was obdurate to [Plaintiff's] request of the person[s] in the

issuance of the directive to cease the Religious Accommodation of Kosher Meals."  (Doc. No. 24

at PageID# 176.)  This allegation, standing alone, does not state a plausible claim for relief

against Defendant Stills under the First Amendment.

Lastly, to the extent Plaintiff is suing Defendants Weizer and Stills based on the fact they

are "food service managers," this claim must fail since (as noted above) liability under § 1983

cannot be imposed based on *respondeat superior.  See Miller*, 408 F.3d at 817, n. 3; *Grinter*, 532

F.3d at 575.  Plaintiff has not alleged any facts suggesting Defendants Weizer and/or Stills

authorized, approved, or knowingly acquiesced in the alleged constitutional violations that form

the basis of Plaintiff's First Amendment claim.  Accordingly, it is recommended Plaintiff's

individual capacity First Amendment claims against Defendants Weizer and Stills be dismissed.[11]

---

[11] The Amended Complaint does not specify whether Plaintiff is suing Defendants Davis,
Sloan, King, Weizer and Stills in their official capacities, individual capacities, or both.  Neither
party addresses this issue in their briefs before the Court.  Notably, Plaintiff does not assert
(either in the Amended Complaint or in any of his various briefs) that he intended to pursue
official capacity claims against these Defendants.  Thus, the Court deems any official capacity
claims against Defendants waived.  Even assuming, *arguendo,* that Plaintiff is suing these

With respect to Defendant Davis, the Amended Complaint identifies him as the Religious Service Administrator.  (Doc. No. 24 at PageID#173.)  The only allegation relating to Defendant Davis is as follows: "It was purported that Mr. Davis, Religious Administrator of ODRC, had not received none of the prior submitted Religious Accommodation request."  (*Id.* at PageID# 183.) Standing alone, this allegation is insufficient to state a plausible claim for relief against Defendant Davis under the First Amendment.  As with the other Defendants, Plaintiff fails to allege any specific conduct on Davis' part relating to the decision to discontinue kosher meals, nor does he allege that Davis "authorized, approved or knowingly acquiesced in" the allegedly unconstitutional conduct at issue.

Nonetheless, the Court notes that Defendant Davis is identified in the Amended Complaint as the Religious Service Administrator.  Moreover, giving the *pro se* Amended Complaint a liberal construction, Plaintiff appears to suggest that he previously sent one or more requests to Defendant Davis for religious accommodation.  Even assuming, *arguendo*, this is sufficient to allege Defendant Davis had some involvement in the decision to deny Plaintiff kosher meals, it is recommended the Court dismiss Plaintiff's First Amendment claim on the grounds that Plaintiff has failed to allege that kosher meals are related to his sincerely held religious beliefs.

The First Amendment, which applies to the States through the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), states:

---

Defendants in their official capacities, it is recommended such claims be denied.  Any official capacity claims would be construed against Lake Erie Correctional Institution, which is owned and operated by CoreCivic under contract with the ODRC.  Plaintiff has not directed this Court's attention to any allegations in the Amended Complaint that identify an unconstitutional custom or policy attributable to either CoreCivic, the ODRC, or " Trinity Food Service" that could potentially support official capacity claims against these Defendants.

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  However, because incarceration necessarily places limits on an inmate's freedoms, a delicate balance exists between prisoners' constitutional rights and legitimate security concerns of prison administrators. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).  While inmates retain First Amendment protections—including freedom of religion—prison administrators are given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

In evaluating a free exercise of religion claim, this Court must first determine if the prison's action placed a substantial burden on Plaintiff's sincerely-held religious beliefs. *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir.2001). "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Id.* (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir.1987)). *See also Yaacov v. Mohr*, 2018 WL 6333604 at * 2 (6th Cir. June 5, 2018).  As another court within this Circuit recently explained:

> Purely secular views or personal preferences will not support a Free Exercise Clause claim. *Frazee v. Ill. Emp't Sec. Dep't*, 489 U.S. 829, 833 (1989). "Only beliefs rooted in religion are protected by the Free Exercise Clause...." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 713 (1981).
>
> "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation." *Mosier v. Maynard*, 937 F.2d 1521, 1526 (10th Cir. 1991) (citing *Johnson v. Moore*, 926 F.2d 921, 923 (9th Cir. 1991)); *see also Jackson v. Mann,* 196 F.3d 316, 320 (2d Cir. 1999) (holding that prison officials may inquire into the sincerity of an inmate requesting kosher meals); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (holding that prison authorities may deny insincere requests for religious meals).  In the absence of such

20

an inquiry into the sincerity of the religious beliefs, prisoners would be free to assert false religious claims that are actually attempts to gain special privileges or to disrupt prison life. *Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996).

When inquiring into the sincerity of an inmate's religious beliefs, prison officials should not attempt to evaluate the truth or validity of the beliefs. *United States v. Seeger,* 380 U.S. 163, 184–85 (1965). "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas,* 450 U.S. at 714. Accordingly, the inquiry should focus on whether the beliefs are "truly held" and whether they are "religious in nature." *Mosier,* 937 F.2d at 1526 (quoting *Martinelli v. Dugger*, 817 F.2d 1499, 1504 (11th Cir. 1987)). But it is beyond dispute that "[d]efendants have the right to ensure that each prisoner is sincere in his belief...." *Perkins v. Booker*, No. 2:08-cv-97, 2009 WL 2058780, at *7 (W.D. Mich. May 29, 2009); *see also McQuiter v. Burnett*, No. 2:07-cv-100, 2008 WL4534110, at *10 (W.D. Mich. July 30, 2008).

*Bennett v. Burt*, 2016 WL 7034240 at * 3 (W.D. Mich. Dec. 2, 2016).

Only if the prisoner makes this threshold showing of a sincerely held religious belief will the Court consider "whether the challenged practice of the prison officials infringes on the religious belief." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). *See also Welch v. Spaulding*, 627 Fed. Appx. 479, 485 (6th Cir. 2015). In this context, a "substantial burden" must be more than an incidental effect on one's religious exercise. *See Lyng v. Northwest Indian Cemetary Protective Ass'n*, 485 U.S. 439, 450, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988). The prison's policy must place significant pressure on an inmate to modify his behavior and violate his religious beliefs. *Id*. If the policy does not "substantially burden" a sincerely-held tenet of Plaintiff's religion, the claim must be dismissed.

Moreover, even if a policy places a substantial burden on Plaintiff's religion, the policy will be upheld as long as it is "reasonably related" to a legitimate penological interest. *Turner v.*

21

*Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Because prison administrators are given deference, prisoners are not automatically entitled to the best possible means of exercising their religion.  *Weinberger v. Grimes*, 2009 WL 331632 at *4 (6th Cir.2009).

Here, Plaintiff fails to allege a sincerely held belief that his religion requires he be provided with kosher meals.  The Amended Complaint does not allege Plaintiff is Jewish, nor does it set forth any factual allegations regarding the nature of his religious beliefs or the importance of kosher meals to the practice of his religion.  Indeed, nowhere in the Amended Complaint does Plaintiff identify a sincerely-held tenet of his religion or explain how it has been substantially burdened by Defendants through the denial of kosher meals.  The only specific factual allegation in the Amended Complaint is that Plaintiff requested kosher meals by (apparently) submitting a religious accommodation request.  However, "simply requesting a religious accommodation is not enough."  *Bennett*, 2016 WL 7034240 at * 6.  *See also Crump v. Prelesnik*, 2013 WL 1338027 at *3 (W.D. Mich. Feb. 13, 2013) ("[A] request to attend group religious services is not sufficient without providing the chaplain with evidence of religious preference."); *Snyder v. Trudell*, 2009 WL 37183 at *11 (E.D. Mich. Jan. 6, 2009) ("Prison officials are not required to accept a prisoner's bald assertion of religious faith."); *Moffat v. Michigan*,  2007 WL 2904041 at *1 (W.D. Mich. Oct. 4, 2007) ("Until the prison recognizes that plaintiff's faith is sincerely Judaism, plaintiff cannot receive a Kosher meal. . . . . A prisoner is not simply entitled to a Kosher meal upon request.");  *Adams v. Burnett*,  2007 WL 329992 at *5 (W.D. Mich. Jan. 31, 2007) ("Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners['] needs.").

Here, even giving the Amended Complaint a liberal construction, Plaintiff has failed to allege a sincerely held religious belief; i.e. he failed to allege that his need for kosher meals is "religious in his own scheme of things' and is 'sincerely held.'"[12] *Flagner*, 241 F.3d at 481. Accordingly, it is recommended Plaintiff's individual capacity First Amendment claim against Defendant Davis be dismissed.

For all the reasons set forth above, it is recommended Defendants' Motions to Dismiss Plaintiff's First Amendment claims be granted.

### 2.    Eighth Amendment Claims

Construed liberally, the Amended Complaint alleges two separate Eighth Amendment claims.  Plantiff's first claim is based on the alleged denial of adequate medical care. Specifically, the Amended Complaint alleges that  "medical did not inform" Plaintiff that consuming soy products while taking coumadin would cause "acute gastrointestinal pain & distention;" and "refused to provide relief with a diet pass from the dietitian."  (Doc. No. 24 at PagID# 176.)  Plaintiff further asserts "medical is nonexistent" and alleges he has been "denied adequate medical & dietary intervention."  (*Id*. at PageID# 179.)

Plaintiff's second Eighth Amendment claim is based on the alleged failure to provide nutritionally adequate food.  (*Id.* at PageID# 180.)  In this regard, Plaintiff alleges the non-kosher meals served at La.E.C.I. are putrid, unpalatable, and not in accordance "with the State & Federal

---

[12] Plaintiff's reliance on *Yaacov v. Mohr*, 2018 WL 6333604 (6th Cir. June 5, 2018) is misplaced.  In that case, the Sixth Circuit held that Yaacov's allegation that he maintained a meatless kosher diet for six years prior to the ODRC's change in food service provider was sufficient to adequately allege a sincerely held religious belief. *Yaacov v. Mohr*, 2018 WL 6333604 at *2 (6th Cir. June 5, 2018).  Here, however, there are no similar claims that would support an inference by this Court that Plaintiff's desire for kosher meals is based upon his sincerely held religious belief.

23

requirements for a nutritionally healthy diet."  (*Id*. at PageID# 178.)  He further alleges deliberate indifference is demonstrated by the following:  (1) "'fraudulent' food evaluation practices of replacing unfavorable truthful evaluations of the offender population by those completed by Trinity Food Personnel & coerced signatures of kitchen workers under the duress of arrogation of incentive pay;" (2) "kitchen servers instructed to reduce portion sizes smaller than the recommended serving size;" and (3) "multiple different types of products are often mixed together from different days altering the content of the menu, unbeknownst to the offender population of what is consumed, often after the (3) day expiration period."  (*Id*. at PageID# 180-181.)

Defendants argue Plaintiff's Eighth Amendment claims should be dismissed because the Amended Complaint fails to contain any allegations that the named Defendants were in any way responsible for, or actively involved in, either Plaintiff's medical care or the formulation of the menu served at the facility.  (Doc. No. 29 at 9-10; Doc. No. 32-1; Doc. No. 37.)

The Court agrees with Defendants.  There are no allegations in the Amended Complaint that any of named Defendants were responsible for, or personally involved in: (1) the alleged failure to advise Plaintiff that particular foods should not be consumed while taking coumadin; (2) the alleged failure to "provide relief with a diet pass from the dietitian" or to otherwise provide medical care relating to his gastrointestinal discomfort; or (3) the formulation of the menu and/or selection of food products served at La.E.C.I.  Nor are they any allegations that any of these Defendants falsified food evaluation forms, instructed kitchen servers to reduce portion sizes, or mixed different types of expired food products together or instructed anyone else to do so.  As noted above,  a § 1983 plaintiff cannot establish the liability of any defendant absent a

24

clear showing that he/she was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *See Rizzo*, 423 U.S. at 371  *See also Pool*, 2019 WL 441500 at * 2; *McKinney,* 2017 WL 4541720 at * 3; *Imburgia*, 2012 WL 1035731 at * 4.  Here, Plaintiff has simply failed to allege that any of the named Defendants were personally involved in the conduct underlying his alleged Eighth Amendment violations.

It is possible that Plaintiff named these particular Defendants based on their supervisory positions as Warden, Warden of Special Programs, and "Food Service Managers."  However, "supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act."  *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1990).  Rather, a supervisor must have actively engaged in unconstitutional behavior.  *Id*.  In other words, in order for liability to attach, a plaintiff must show that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it."  *Cardinal*, 564 F.3d at 802–03.  *See Grinter,* 532 F.3d at 575 (to succeed on a § 1983 claim, plaintiff  "must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'")  Here, there are no allegations that any of the named Defendants encouraged the misconduct, directly participated in it, or otherwise implicitly authorized, approved, or knowingly acquiesced in the conduct underlying Plaintiff's Eighth Amendment claims.

Accordingly, it is recommended that Defendants' Motions to Dismiss Plaintiff's Eighth Amendment claims be granted.

### 3.      Fourteenth Amendment Due Process Claims

Next, Plaintiff alleges "[t]he abrupt discontinuance of religious accommodation of

previously approved Kosher Meals was without procedural due process." (Doc. No. 24 at PageID# 177.) He also alleges "the institution's grievance procedure is inutile, resulting in discouraging apathetic offenders to use it increasing hostility in the population in its prison, making them unnecessarily safe." (*Id.* at PageID# 184.)

"To establish a procedural due process claim, a plaintiff must demonstrate: 1) a liberty or property interest protected by the due process clause; 2) a deprivation of that protected interest within the meaning of the due process clause; and 3) defendants' failure to afford adequate procedural rights prior to the deprivation." *Russell v. Wilkinson*, 79 Fed. Appx 175, 178 (6th Cir. 2003) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). "To claim a constitutionally protected property right, one must have a 'legitimate claim of entitlement.' " *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Thus, procedural due process analysis involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrections. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). In other words, "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*, 2010 WL 395929 at * 2 (6th Cir. Feb. 4, 2010).

Here, it is recommended Plaintiff's procedural due process claims be denied. With respect to Plaintiff's claim that his procedural due process rights were violated by the "abrupt discontinuance" of kosher meals, this claim fails because Plaintiff has not adequately pled that "there exists a liberty or property interest which has been interfered with by the State."

26

*Thompson,* 490 U.S. at 460.  As discussed at length above, the Amended Complaint fails to allege that Plaintiff is Jewish; that following kosher dietary laws is part of his personal exercise of religious beliefs or is a "sincerely held religious belief;" or that the denial of kosher meals otherwise places a substantial burden on his religious exercise.  In the absence of any such allegations, Plaintiff has failed to allege the first element of a procedural due process claim; i.e., a liberty or property interest protected by the Due Process clause.  Accordingly, it is recommended Plaintiff's procedural due process claim based on the discontinuance of kosher meals be dismissed.

Further, to the extent Plaintiff's procedural due process claim is based on his allegation that "the grievance procedure is inutile," this claim is without merit.  The Sixth Circuit has held that there is no inherent constitutional right to an effective prison grievance procedure.  *See Argue v. Hofmeyer*, 2003 WL 22495834 at * 2 (6th Cir. Oct. 30, 2003); *Walker v. Dept. of Corrections*, 2005 WL 742743 at **3 (6th Cir. April 1, 2005).  *See also Stiltner v. Donini,* 2019 WL 1880037 at * 3 (S.D. Ohio April 1, 2019); *Martin v. Wilson*, 2018 WL 3083891 at * 2 (S.D. Ohio June 22, 2018).  Thus, the Court finds that any alleged deficiencies in the grievance procedure at La.E.C.I. are insufficient to demonstrate interference with a  "liberty or property interest."

Accordingly, and for all the reasons set forth above, it is recommended that Defendants' Motions to Dismiss be granted with respect to Plaintiff's procedural due process claims.

**E.      Other Claims**

**1.        28 CFR § 541.12**

The Amended Complaint also purports to assert unspecified claims under "28 C.F.R.

§541.12(1) & (4)."  (Doc. No. 24 at PageID# 174.)  There does not currently appear to be any such regulation in the Code of Federal Regulations.  It is possible that, by referencing this former section, Plaintiff intended to assert a claim under a BOP regulation regarding "Inmate rights and responsibilities."  *See Sandoval v. Corrections Corp. of America*, 2012 WL 1552265 at * 6 (N.D. Ohio Apr. 30, 2012) (describing 28 C.F.R. § 541.12 as a BOP regulation regarding "Inmate rights and responsibilities"); *Bonilla v. Corrections Corp. of America*, 2012 WL 263378 at * 6 (N.D. Ohio Jan. 27, 2012).  One of the rights formerly listed in § 541.12 is "the right to health care, which includes ... medical and dental treatment."  *Id.*  Another is the right to respectful, impartial, and fair treatment by staff.  *See Choiniere v. Citchen*, 2010 WL 1064428 at * 4 (E.D. Mich. Feb. 22, 2010).

Even assuming, *arguendo*, the code provision cited by Plaintiff was still in force, Plaintiff's claim would be without merit.  Courts have found that former 28 CFR § 541.12 does not confer any rights on prison inmates.  *See e.g., Sandoval*, 2012 WL 1552265 at * 6; *Bonilla*, 2012 WL 263378 at * 6.  *See also Belt v. U.S. Dep't of Justice*, 2010 WL 5095860 at *4 (M.D. Pa. Dec. 8, 2010).  Therefore, it is recommended that Plaintiff's claim under former 28 CFR § 541.12 be dismissed for failure to state a claim.

### 2. Claims asserted for the first time in Plaintiff's Reply Briefs

In one of his Reply Briefs, Plaintiff attempts to assert a claim under § 3715.59(A) of the Ohio Pure Food and Drug Law.  (Doc. No. 36 at 7.)  That provision provides that: "Food is adulterated within the meaning of sections 3715.01, 3715.02, 3715.022, and 3715.52 to 3715.72 of the Revised Code, if any of the following apply: (A) It bears or contains any poisonous or deleterious substance that may render it injurious to health; but in case the substance is not an

added substance, the food shall not be considered adulterated if the quantity of the substance in the foot does not ordinarily render it injurious to health."  Ohio Rev. Code § 3715.59(A).

It is recommended any such claim be dismissed.  The Amended Complaint does not reference Ohio Rev. Code § 3715.59(A) or otherwise clearly assert a claim under Ohio's Pure Food and Drug Law.  Moreover, Plaintiff alleges the food served at La.E.C.I. is unpalatable and fails to comply with nutritional guidelines because it is high in sodium, hydrogenated oils, soy, and carbohydrates.  (Doc. No. 24 at PageID# 178.)  The Court finds this is not sufficient to state a claim arising from "adulterated" foods, as that term is defined in Ohio Rev. Code § 3715.59(A).  Accordingly, it is recommended that any claims asserted under Ohio Rev. Code § 3715.59(A) be dismissed.

Finally, Plaintiff's briefing in this matter could be read to suggest that he intends to bring this action on behalf of other inmates at La.E.C.I.  (Doc. Nos. 33, 36.)  To the extent Plaintiff purports to act on behalf of other prisoners, courts have routinely found that a *pro se* litigant may not act in a representative capacity and is limited to representing himself on his own claims.  *See* 28 U.S.C. § 1654.  *See e.g., Davismoore,* 2019 WL 1558679 at fn 1; *Muhammad v. Pinkney*, 2016 WL 1031107 at * 2 (N.D. Ohio March 15, 2016); *Manning v. Saginaw Co.,* 2018 WL 5619704 at fn 1 (E.D. Mich. Oct. 30, 2018); *Ketzner v. Williams*, 2008 WL 4534020 at fn 1 (W.D. Mich. Sept. 30, 2008).  Indeed, the Sixth Circuit has repeatedly held that *pro se* prisoner litigants are inadequate class representatives.  *See, e.g., Heard v. Caruso,* 351 Fed. Appx. 1, 12 (6th Cir. Aug. 27, 2009); *Ziegler v. Michigan*, 59 Fed. Appx 622, 624 (6th Cir.2003); *Palasty v. Hawk*, 15 Fed. Appx 197, 200 (6th Cir.2001); *Marr v. Michigan*, 1996 WL 205582 at *1 (6th Cir. Apr.25, 1996) ("[A]n imprisoned litigant who is not represented by counsel may not represent a

class of inmates because the prisoner cannot adequately represent the interests of the class.")
(citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975)). Because Plaintiff cannot
adequately protect the interests of other plaintiffs, any such claims are dismissed.

**F.      Conclusion**

Accordingly, and for all the reasons set forth above, it is recommended Defendants'
Motions to Dismiss (Doc. Nos. 29, 31, 32) be granted.

### IV.   Requests for Preliminary Injunction

As noted above, Plaintiff has filed two requests for preliminary injunction. (Doc. Nos. 8,
22.) For the following reasons, it is recommended Plaintiff's requests be denied.

**A.      Standard**

When considering a motion for preliminary injunction, the court must consider four
factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the
movant would suffer irreparable injury without an injunction; (3) whether issuance of an
injunction would cause substantial harm to others; and (4) whether the public interest would be
served by the injunction. *See National Credit Union Administration Board v. Jurcevic,* 867 F.3d
616, 622 (6th Cir. 2017); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*.,
511 F.3d 535, 542 (6th Cir. 2007). *See also Palmer v. Harris*, 2018 WL 6062305 at *6 (N.D.
Ohio Nov. 20, 2018). A party seeking injunctive relief bears a heavy burden of establishing that
the extraordinary and drastic remedy sought is appropriate under the circumstances. *See
Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

Moreover, where a prison inmate seeks an order enjoining state prison officials, this court
is required to proceed with the utmost care and must recognize the unique nature of the prison

setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n. 3 (6th Cir.1984). *See also Hudson v. Caruso*, 748 F.Supp.2d 721, 725 (W.D. Mich. Sept. 14, 2010). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.1995). "Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts." *Hudson,* 748 F.Supp.2d at 725 (citing *Bell*, 441 U.S. at 547). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Bell*, 441 at 548. For these reasons, "a plaintiff attacking administrative decisions about issues of security and discipline must meet a heavy burden." *Hudson*, 748 F.Supp.2d at 725.[13]

**B.    Analysis**

The Court finds the first factor – likelihood of success on the merits– weighs heavily against Plaintiff. As discussed at length above, Plaintiff's allegations regarding the decision to deny him kosher meals, the nutritional adequacy of prison food, and the alleged lack of medical treatment for his gastrointestinal problems, are insufficient to establish a likelihood of success on the merits. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). *See*

---

[13] The Court is not required to conduct an evidentiary hearing when, as here, there are no material facts in dispute – the only dispute is whether Plaintiff's factual allegations, taken as true, state plausible claims for relief under the RLUIPA, or the First, Eighth, or Fourteenth Amendments. *Certified Restoration Dry Cleaning Network,* 511 F.3d at 553 (citation omitted).

*also Hudson,* 748 F. Supp.2d at 725; *Palmer,* 2018 WL 6062305 at * 6.

The Court finds the second factor– irreparable injury– also weighs against Plaintiff. The "key word" in determining the extent of an injury sufficient to support the award of injunctive relief is "irreparable." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir.1991). *See also Hudson*, 748 F.Supp.2d at 725. Mere injuries, however substantial, are not enough. *Michigan Coaliation of Radioactive Material Users, Inc.*, 945 F.2d at 154. Rather, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id. See also NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc*., 246 Fed. Appx. 929, 943 (6th Cir. 2007); *Hunt v. Mohr*, 2011 WL 4467764 at * 3 (S.D. Ohio Sept. 26, 2011).

Plaintiff claims he will suffer irreparable injury because the non-kosher meals served at the prison are "unpalatable," "unsatiating," and lacking in nutritional value. The Court finds these allegations insufficient to demonstrate irreparable injury; i.e., harm that is both "certain and immediate." Plaintiff has not alleged he is being denied food, or that the food he is being served represents an immediate danger to his health. Accordingly, this factor weighs against Plaintiff. [14]

Finally, the Court finds the other factors relevant to the preliminary injunction analysis do not shift the balance in Plaintiff's favor. Plaintiff maintains that no harm will come to others if an injunction is issued and, in fact, such an injunction would be in the public interest. Even assuming a lack of significant harm to others, with such a bare showing as to likelihood of success and irreparable harm, the Court is not convinced that second guessing the decisions of prison personnel would be in the public interest. *See e.g., Hughes v. Lavender*, 2011 WL

---

[14] Plaintiff does not argue he will suffer irreparable injury as a result of the alleged denial of medical care. Thus, the Court deems this argument waived.

1337155 at *4 (Apr. 6, 2011) (holding that removing the normal deference the Court gives to jail staff to make decisions through a preliminary injunction, without a strong showing of threat of immediate injury, would not serve the public interest); *Hunt*, 2011 WL 4467764 at * 5.

A preliminary injunction is an extraordinary remedy, and will only be granted if the moving party carries his burden of showing that such extraordinary relief is warranted. *See Overstreet*, 305 F.3d at 573. After weighing all four factors, the Court concludes Plaintiff has not established that injunctive relief is warranted. It is therefore recommended that Plaintiff's Requests for a Preliminary Injunction (Doc. Nos. 8, 22) be denied.

### V. Motion for Appointment of Counsel

After all parties had filed their dispositive motions, Plaintiff filed a Motion for Appointment of Counsel, stating he is "unlettered at law, and the complexity of and diversity of issues and defendants will require the use of expert witnesses." (Doc. No. 41-1.) He further asserts appointment of counsel is necessary because of his inability to investigate the facts due to his custodial status and his lack of "medical knowledge to thoroughly articulate the nutritional deficiencies and subsequent latent deficiencies therefrom." (*Id.*)

"The appointment of counsel in a civil proceeding is not a constitutional right and is justified only in exceptional circumstances." *Lanier v. Bryant*, 332 F.3d 999 (6th Cir. 2003). *See also Gallant v. Ahmed,* 2018 WL 2292936 at *4 (6th Cir. April 3, 2018); *McDougald v. Davis*, 2018 WL 1899229 at * 7 (S.D. Ohio April 20, 2018); *Goudlock v. Blankenship*, 2014 WL 320386 at * 6 (N.D. Ohio Jan. 29, 2014). Here, Plaintiff has failed to demonstrate exceptional circumstances that warrant an appointment of counsel. *Lavado v. Keohane*, 992 F.2d 601, 605–606 (6th Cir. 1993) (citations omitted). Consequently, Plaintiff's Motion (Doc. No. 41) is

DENIED.

## VI. Conclusion

For all of the foregoing reasons, it is recommended that Plaintiff's Requests for Preliminary Injunction (Doc. Nos. 8, 22) be DENIED.  It is further recommended that Defendant Davis' Motion to Dismiss (Doc. No. 29) be GRANTED;  Defendant Sloan and King's Motion to Dismiss (Doc. No. 31) be GRANTED; and Defendant Weizer and Stills' Motion to Dismiss (Doc. No. 32) be GRANTED.  In addition, Plaintiff's Motion for Appointment of Counsel (Doc. No. 41) is DENIED.

Date: May 23, 2019                                          s/ *Jonathan D. Greenberg*
                                                            Jonathan D. Greenberg
                                                            U.S. Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**